IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT PIERRE KIDD,

                              Plaintiff,

    v.                                                              OPINION and ORDER

BRIAN FOSTER,                                              18-cv-831-jdp[1]

                              Defendant.

---

Plaintiff Robert Pierre Kidd, appearing pro se, is a prisoner at the Waupun Correctional Institution. Over the past few years, Kidd has filed a dozen cases in this court, most of them having to do with how prison officials have mistreated him when they respond to his seizures. Only several of the cases are still open. In my last order concerning Kidd's cases, I allowed Kidd to voluntarily dismiss one case and I discussed the remining four, all of which were about his seizures. *See* Dkt. 77 in case no. 17-cv-265-jdp. Those cases are:

- 17-cv-265-jdp: Kidd alleges that in July 2016, prison staff pepper sprayed him while he was having a seizure.

- 17-cv-597-jdp: Kidd alleges that he was held down and pepper sprayed during a seizure in December 2014 even though prison officials were told not to handcuff him during seizures.

- 18-cv-313-jdp: Kidd alleges that he was billed about $540 for a correctional officer's injuries after a March 2018 incident involving another seizure.

- 18-cv-707-jdp: Kidd alleges that he was placed in segregation for having a seizure in July 2018 and that the conditions there are dangerous because of his illness.

---

[1] Although I set forth only the caption of case no. 18-cv-831-jdp above, the clerk of court is directed to docket this opinion in each of the other cases discussed in this opinion.

Throughout the litigation of these cases, Kidd alternated between saying that he wanted to combine all of his allegations together in one lawsuit—with only one filing fee—and saying that he wanted to proceed with separate lawsuits. I gave him a final chance to decide whether to combine the lawsuits by filing an amended complaint combining all of his allegations. Dkt. 77 in the '265 case, at 5–6. Otherwise I would consider his four cases separately.

Kidd responded by filing a brand-new complaint, docketed under no. 18-cv-831-jdp, in which he refers to his allegations in three of the four cases (all but the '597 case), names WCI Warden Brian Foster as the defendant, and alleges that the "prison handbook authorize[d]" WCI officials to mistreat him. Dkt. 1 in the '831 case. He followed with a letter asking that all of his lawsuits be joined together, so I take him to be saying he wishes to join the '597 case as well. Kidd has also filed a series of motions in his various cases.

A. New complaint

Kidd's complaint in the '831 case has not completely fixed all of the problems with his various allegations, but he has made clear that he wants to proceed with his seizure-related claims together. And he provides allegations suggesting how all of the allegations belong together—the "handbook" policy authorizing the alleged mistreatment. So I will allow Kidd to combine the four previous cases under the '831 caption, and I will direct the clerk of court to close the four previous cases. As I stated in my last order, this means that Kidd will owe a filing fee only for the '831 case.

Because Kidd says that he wants to join all of his cases, I take him to be saying that he wishes to continue with his individual-capacity excessive force and medical care claims against defendants Joel Sankey, Matthew Huelsman, and Jessie Schneider from the '597 case. I will

direct the clerk of court to docket Kidd's complaint in the '597 case into the '831 case, and I will treat both of those complaints together as the operative complaint.

As for his allegations from the other three cases, Kidd has failed to fix a major problem with those allegations: he does not identify which individual WCI employees harmed him or punished him for having seizures. He names Warden Foster as a defendant, but he does not actually allege that Foster had any personal involvement in the violations of his rights. So I will not allow him to proceed on any claims for money damages regarding those incidents. Kidd continues to ask for damages, but he states that he believes that he can sue the prison itself for those violations, which is incorrect.

Because Kidd appears to continue to be mistaken about how to state "individual capacity" claims for money damages against the persons who violated his rights, I will give him a final opportunity to amend his complaint in the '831 case to include as defendants all of the individuals who participated in the various incidents he mentions in his allegations, and in subsequent seizure-related incidents he mentions in additional filings to the court. As I have previously explained to Kidd, he should state his allegations as if he were telling a story to someone who knows nothing about his allegations. I cannot allow him to proceed on claims against any individuals unless he states who they are and what they did to harm him. If Kidd does not know the identity of particular defendants, he may label them as John Doe No. 1, John Doe No. 2, and so on, and the court has procedures by which he may make discovery requests to identify those defendants. I will have defendants file an answer after Kidd responds to this order.

Kidd also seeks injunctive relief to force an end to the mistreatment and for restoration of funds that have been deducted from his trust fund account, so I take him to be attempting

to bringing claims against defendant Foster in his "official capacity." Those types of claims are essentially claims for injunctive relief against the state itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To establish that he is entitled to injunctive relief on his official capacity claims, Kidd must show that a policy or custom of the state played a part in the alleged constitutional deprivations. *Id.* His allegation that "handbook" policies caused him to be mistreated is enough to meet this standard. I will allow Kidd to proceed on official-capacity claims against Foster under the Eighth Amendment for his repeated mistreatment, and under the Due Process Clause of the Fourteenth Amendment for the confiscation of funds from his trust fund account.

B. **Remaining motions**

Kidd filed a series of documents in his various cases that I will construe as motions. Kidd asks for an order directing the prison business office to apply the $73.43 balance in his "release savings" account toward the filing fee in the '597 case. Dkt. 91; Dkt. 105; Dkt. 108 in the '597 case. Kidd no longer owes a filing fee for the '597 case, but even assuming that he would like to use those funds to pay the fee in this case, the court has already denied similar motions made by Kidd. *See* Dkt. 112 in the '597 case. This federal court generally does not have the authority to tell State of Wisconsin officials how to interpret state release-account regulations. So I will deny his motions for an order directing officials to withdraw the funds.

Kidd asks the court for forms to properly request an order directing prison officials to return about $94 that they withdrew from his veteran's pension income to pay restitution in a prison disciplinary matter. I previously denied similar motions, stating that Kidd's lawsuits were not related to the pension issue. *See* Dkt. 90 in the '597 case, at 2. Now Kidd explains that the funds were withdrawn as part of his restitution for injuries an officer inflicted on

4

another officer when they attempted to tase Kidd during one of his seizures, so the confiscation of funds was another way that he was harmed by defendants' attempts at mistreating him.

I take Kidd to be seeking preliminary injunctive relief ordering prison officials to return the funds. The court does not have a "form" for such a motion, but it does have procedures to be followed when making such a motion. I will direct the clerk of court to send Kidd a copy of those procedures. But I caution Kidd that it would be extremely rare for the court to grant a motion for preliminary injunctive relief on this type of issue. A preliminary injunction is "an extraordinary and drastic remedy" that should be granted only when the movant carries the burden of persuasion by a "clear showing." *Boucher v. School Bd. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998) (citations omitted). When the movant seeks a mandatory injunction, "an injunction requiring an affirmative act by the defendant," the motion must be "cautiously viewed" and granted only "sparingly." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

Kidd has filed submissions either asking that the court subpoena documents, including his medical records, or otherwise compel defendants to produce certain information. *See* Dkt. 92 and 94 in the '597 case. But defendants say that Kidd did not file any discovery requests. Defendants add that Kidd has not authorized the release of his medical records, so counsel for defendants do not even have access to that material at this point. I agree with defendants that Kidd's motion is premature. I will not force defendants to turn over information before Kidd first uses the discovery procedures set out in the Federal Rules of Civil Procedure.

After Kidd files an amended complaint and defendants answer it, the court will hold a preliminary pretrial conference by phone. Magistrate Judge Stephen Crocker will explain some

5

of the procedures the court and litigants follow in lawsuits like these, and he will provide some information about discovery procedures. Defendants also state that Kidd can view his medical records without making a discovery request or authorizing the release to counsel. I note that if Kidd continues to proceed with claims where his medical information is relevant, I will require him to authorize the release of medical records reasonably related to the incidents in question, so that defendants can defend themselves against Kidd's claims.

Kidd asks the court to sanction defendants in the '597 case for misleading him about the death of one of the defendants. He says that counsel for the state told him that defendant Huelsman had died, and that counsel attempted to get him to release the claims against Huelsman, only to later say that there was a mistake and that it was defendant Sankey who had died. *See* Dkt. '94 in the 597 case. But Kidd does not support his motion with any evidence suggesting that defendants made such a mistake or that they told him that Sankey had died. Defendants say that they never did so, and the record seems clear on this point: they have already submitted an obituary for Huelsman. *See* Dkt. 84-1 in the '597 case. And in any event, even had counsel had somehow mixed up the death of one of the defendants, it is unlikely that I would consider such a mistake to be sanctionable. I will deny Kidd's motion for sanctions.

Defendants have filed a motion for summary judgment on the claims in the '597 case. I will deny that motion without prejudice now that Kidd has joined all of his seizure-related claims together.

ORDER

IT IS ORDERED that:

1. The clerk of court is directed to close case nos. 17-cv-265-jdp, 17-cv-597-jdp, 18-cv-313-jdp, and 18-cv-707-jdp. Plaintiff Robert Pierre Kidd will owe a filing fee only for case no. 18-cv-831-jdp. The clerk of court is directed to apply the filing-fee payments from the other four cases into the '831 case or plaintiff's other filing-fee obligations in this court.

2. The clerk of court is directed to docket Kidd's complaint in the '597 case into the '831 case. Those two complaints will be treated jointly as the operative complaint in the '831 case.

3. Plaintiff is GRANTED leave to proceed on the following claims in the '831 case:

    - Eighth Amendment excessive force and medical care claims against defendants Joel Sankey, Matthew Huelsman, and Jessie Schneider.

    - Official-capacity Eighth Amendment and due process claims against defendant Brian Foster.

4. Plaintiff may have until March 26, 2019, to file an amended complaint fixing the problems discussed in the opinion above. Defendants need not file an answer until after the court screens plaintiff's amended complaint.

5. Plaintiff's motions for withdrawal of funds, Dkt. 91; Dkt. 105; Dkt. 108 in the '597 case, are DENIED.

6. The clerk of court is directed to send plaintiff a copy of the court's procedures for briefing motions for injunctive relief.

7. Plaintiff's motions to compel discovery of documents, Dkt. 92 and Dkt. 94 in the '597 case, are DENIED.

8. Plaintiff's motion for sanctions, Dkt. 94 in the '597 case, is DENIED.

9. Defendants' motion for summary judgment in the '597 case, Dkt. 118 in the '597 case, is DENIED without prejudice.

Entered March 5, 2019.

BY THE COURT:
/s/

_____
JAMES D. PETERSON
District Judge